for Mr. Reyes, the appellant, in this case. You need to speak a little louder, please. Oh, yes. Sorry, Your Honor. My name is Luis, and I'm court-appointed counsel on the C.J. panel for Mr. Reyes, the appellant, in this matter. If it pleases the Court, I will proceed with oral argument. Yes, please. Well, that's what you're here for, aren't you? Excuse me? You said, if it pleases the Court. That's what you're here for, oral argument, isn't it? Yes. I'll take commands. In this case, this case presents an important constitutional issue of the right to be free from unlawful search and seizure. In this case, there was an officer that received a call at the police station, and he was told that Ray Regis is dealing drugs at a location, and this officer traveled to there. Now, when the officer arrived there, it's important to look at the snapshot that was in evidence of the facts that he could particularly articulate in this case. In this case, he did see Raymond Reyes, who he also said that he knew from a prior domestic violence case that he was involved in. But the officer He didn't say that. He said he had heard that he was the investigator for domestic violence. Oh, excuse me, Your Honor. That may make a difference to your ultimate. Yes. And he never saw Mr. Reyes exchange any drugs with any individual that was at that location. He never observed Mr. Reyes receiving money from anyone at that location. When Mr. Reyes stepped out of the vehicle, his vehicle, he had a plate lunch in his hand and a straw. First, parsing the Fourth Amendment aspects of this is rather complicated. Are you contending there was a stop at some point? Was there a stop here? If so, when did it occur? Yes. And if so, when did it occur? Well, the vehicle was already stopped. It was parked. Was there a seizure subject to reasonable suspicion before the search that was subject to probable cause? What exactly is your theory here? Let's put it that way. Yes. The seizure would be that the officer told Mr. Reyes to step out of the vehicle. That would be possible. He told him to put his hands on the wheel. I thought that the officer's testimony is he said, put your hands on the wheel, and he only And Reyes stepped out on his own. I don't know if that matters, but that's the evidence. That's the testimony. Yes. And I don't think that would matter. Even if the officer says, put your hands on the wheel, that's still not allowing it. You're saying there was a seizure of him either by saying, put your hands on the wheel or walk out of the car. Yes. Whatever the result, whatever actions Mr. Reyes took, he was seized because the key is he was not free to leave. That's for sure. He was not free to leave. He never did leave, and he went straight to an incarceration cell. So it can't be disputed that he was seized. And at that particular moment, it was never observed that Mr. Reyes was dealing drugs, in fact. The officer never saw that. He never saw any exchange of money. Well, he had a tip. And that's what I'm trying to break into pieces. He had a tip, but the tip, and he gets there, and he sees certain things. Was that enough for the reasonable suspicion to get him to do an investigative seizure, so to speak? Yes. It wasn't. No, it was not, Your Honor. It was not enough, even if you think of Terry v. Ohio, the famous reasonable suspicion test. Why not? Because in Terry v. Ohio, the officer was experienced with someone casing an establishment, and he watched that individual in that casing establishment walk back and forth. But in this case, the only thing that Mr. Reyes was doing in the vehicle was talking to a couple individuals and eating a plate lunch, which is. . . Let me ask you this. This is what bothered me. An officer, police officer, gets a tip. This individual is in a white car. I don't know if they gave him a license number, and he's dealing in drugs. All right? What's the officer supposed to do? He goes there. She's a white car. There's another car by there. Isn't that enough for the officer to at least ask some questions and investigate? I don't believe it is, Your Honor, because he had other options available. He could have parked several cars away, and he could have used binoculars to observe the individual, what he was doing in that car. Wouldn't the natural thing be to, okay, forget it's Hawaii. It's over here in San Francisco. The officer gets a tip that a certain car, describing it, a certain fellow is dealing in drugs. Isn't it a natural thing for the officer to stop the guy and say, Hey, are you dealing in drugs? Is that wrong? I mean, how much restriction do we put on the police? Well. And then when he gets there, he sees a gun. Now, isn't that enough? I mean, he was told this guy has drugs. It's only a tip, but here's a gun. Doesn't he do something, isn't that enough for further investigation? Well, the problem is the tip was uncorroborated. It was a tip by a confidant. I know that was uncorroborated, but officers get tips. You have to follow them up. Well, it's okay to get tips, but if it's an unknown informant, if you don't know the identity of the informant and you can't test the corroboration and know whether they've been reliable in other cases, if this individual that had spoke with this officer had. . . Well, your position is, then I take it in this case, if the officer gets an uncorroborated tip, the officer must do some surreptitious investigation before confronting the individual. Is that your position? Yes, before he makes a seizure, because for all this. . . So put your hands there, and I want to ask you some questions. Yes. If he hadn't said put your hands there, but suppose he had just walked up to the car and said I want to ask you some questions. If he had just. . . Well, there's still a seizure. When he tells him put your hands on the wheel, he's not free to leave. But that's the key to everything, because if he had just. . . Clearly, as Judge Bright suggests, if somebody says there's a guy in a white car dealing drugs at a particular place with a certain license plate, if he just walked up there and said, you know, I just got a tip that you're dealing drugs, aren't you, there wouldn't be any problem. He could have done questioning, but the problem is he never did any of that foundation questioning and said he went right to the seizure without specific articulable facts that would lead a reasonable person to believe that a crime was being committed, because he never observed any drugs or money exchange in hand. So all he had was a person that was in a vehicle sitting there with a plate lunch in his hand. You may be right about that, but what's disturbing about it is that you end up with a situation where if you have somebody who he's afraid is dangerous, then he can't talk to him, or if he's not afraid it's dangerous, they can't talk to him. Well, the important thing of this is to remember that the search is not made good by what's turned up, and it's not so much to just protect Mr. Reyes's rights, but the reason why we have the Constitution is that because, as opposed to a lot of other countries, we want to make sure Mr. Reyes was guilty. There's no dispute that he had drugs. He had to skip the stop question and get to the probable cause for the search. Yes. And the arrest. Are you challenging the arrest as such or just the search? Well, the search, because without the search he couldn't have made an arrest because he couldn't just rely. He did make an arrest without a search. Didn't he just go up there and say, and the guy said to him, I have a gun, and then he arrested him? Did he see the gun before he arrested him? He saw the gun first. But he didn't actually go and get the gun. Well, he could have never saw the gun unless Mr. Reyes stepped out of the vehicle because it was laying on the floor. What was the search? The search was going and looking into the vehicle after he had forced. Looking can't possibly be a search. If the door was open and he looked in and he saw something, that's not a search. That's correct. But in this case, he had no right to even be conducting. He was there on a different matter. He was there to investigate drugs. He was there on a different matter. It's still not a search. So what was the search? Eventually somebody went in and got the gun out of the car, right? Yes. Is that the search we're talking about? Well, he saw the ‑‑ I think you need to take it back to the point where when Mr. Reyes stepped out of the vehicle with the plate lunch and the straw underneath, the officer thought that was a weapon. Okay. And if you really think about that, I mean, he had a box plate lunch and a straw. The officer says, looks like a weapon to me. And he drew his gun. Right. And that's when he ‑‑ It was a seizure, but there wasn't a search. Well, the search was a custodial. At that point, he already decided, oh, he has a gun, he has a weapon. Well, not a gun, but he has a weapon in his hand. Drop what's in your hand. And he sees them at that moment. And then he walked over to the car to do a search within the arm's length, and that's when he saw the gun lying on the floor. And then he attributed a statement to Mr. Reyes that Mr. Reyes said, oh, the gun, I used that for protection. All right. At what point in the encounter do you contend that the sergeant required probable cause? He needed at least reasonable suspicion. Yeah, but that wasn't the question. You know, there's a sequence to fourth amendment inquiry. All right. Yes. All right. We're asking you a specific question. When did he require probable cause? To make a seizure of Mr. Reyes. You can't make an arrest without probable cause. Not the original seizure, because that was a Terry-type seizure. It's when he actually arrested him and put his hands behind his back. Yes. But then you said you're not challenging the arrest. We're really trying to figure out exactly what are you challenging and at what point do you think there would have to be probable cause? Well, first I'm challenging whether he even had a right to talk to Mr. Reyes. Okay. We're not by that. We're suggesting we want to know the next step. Yes. Well, the officer had no probable cause, because all he had was when he told him put your hands on the wheel. Probable cause to do what? To arrest Mr. Reyes for allegedly selling. So now you are challenging the arrest. Yes. Okay. Go ahead. Because the officer, when he said put your hands on the wheel and Mr. Reyes steps out, he thinks there's a weapon, but there's only a plate, lunch, and a straw. There's no reasonable articulate facts that would lead a reasonable prudent person to believe that a crime had been committed, because all he had was an anonymous tip. But the officer says that Reyes told him he had a gun, right? Not until he saw the gun. He saw the gun first. Then he told the officer he was at the suppression hearing at the trial. He said that Mr. Reyes told him that he had that for protection. But he said he observed it on the floor. And... All right. Was there probable cause to arrest him for having the gun? I mean, in other words, what crime did he commit by having the gun? What did Shimabukuro, I'm not going to say his name, but what did he have probable cause to believe he had done when he arrested him and when he went and looked inside for the gun? He had no probable cause, because he didn't know whether Mr. Reyes had a license for that gun or whether he was going to be going to a firing range to shoot at targets. He had no facts that it was a crime to have a gun, because people can have guns as long as they have a license. And he had no facts whether or not Mr. Reyes had a license or not. Well, didn't he, I thought he arrested him for resisting arrest. Am I wrong? Well, he did charge him with resisting arrest. The problem is you can't resist arrest unless you're arrested. So he had to arrest him first for either the gun or the drugs. But because he never saw him dealing drugs and because he didn't know whether or not he had a license to have that gun in the car and take it to a firing range to shoot, then he had absolutely zero probable cause to make an arrest. Well, I don't know about that. He knows that the fellow's been investigated for domestic violence. He's got a chip about drugs. He sees a gun in a car and he can't, what's he supposed to do, walk away at that point? The officer? Well, what the court points out is even more supportive of my case for my client, because saying that he's been investigated for domestic violence, that means he's never even been convicted of domestic violence. So that means that there's no, there's even no, well, it's just looking worse and worse for the government, because at that point if he hasn't been convicted of a domestic violence. Then the other policeman comes up and he at least believes there's been a conviction. Officer Tata, right? Yes, but Officer Tata was not the one who made the initial seizure or the arrest or any of those things. Wasn't he there just about at the point that the actual arrest occurred? He participated in the arrest, right? Yes, he participated. Both of them together handcuffed Mr. Reyes. So is Officer Tata, should he be considered an arresting officer? Well, he was not the arresting officer. It was Shimon Bakura, so. He was there at the time of the arrest. He was there providing backup, but he was not credited being the arresting officer. So you're saying he is not an arresting officer. That's correct. Okay. Therefore, his knowledge cannot be imputed to the other officer. No, because if that's the case, you can't impute the knowledge to Officer Tata without first examining what exactly Shimon Bakura's reason for the arrest is. Okay. If you want to reserve any time, you're running low. Yes, I'll reserve some time, Your Honor. Thank you. If I do understand, your client pleaded guilty, is that right? No, he went to a jury trial two days. Oh, he went to a jury trial. Yes. And the evidence about the arrest and so forth was before the jury too? Yes. Okay. Well, there was a suppression hearing. Some of that stuff did come up, but not the full amount that was. Whatever issues were resolved during the two-day suppression hearing before the trial were not allowed to be relitigated. So some of the information made it before the jury, but not the complete, because the judge had already ruled. Okay. Thank you. Thank you. Good afternoon. May it please the Court, Beverly Lee Samashima, Assistant U.S. Attorney for the District of Hawaii, on behalf of the athlete United States. If I could just address some of the factual. Are you an U.S. attorney or assistant? I'm sorry? Are you an assistant or are you the U.S. attorney? Oh, no, I'm the assistant U.S. attorney. Oh, I got it. Okay. All right. Just to clear up some of the facts or the circumstances that were raised by this court, and first of all, the sequence of events were litigated very fully in a two-day suppression motion at which both the officers, Sergeant Shimabukura and Officer Tada, testified. In addition, the defendant, Raymond Reyes, also took the stand. And as you can see in the exit of records, Judge Gilmore, who was the presiding district court judge over the suppression hearing, made very detailed findings of fact. She broke up her order in terms of disputed facts, undisputed facts, and the undisputed facts were as such, and that is that on October 16th, Sergeant Shimabukura got a call from an anonymous assistant. I think we know the facts. I didn't find your brief very helpful in identifying the kinds of questions that we've been asking. Do you think there was a seizure before the arrest, and when was it? You never answered that question in the brief. We believe that there was reasonable suspicion for the officer's attempt to investigate that anonymous tip and to further detain the defendant for further questioning, to investigate that tip. So he was detained at that point. Yes, and that was how the issue was presented in the court below for the suppression motion. So we addressed it as such. I believe that there was an act that even though the car was stopped, there was a seizure that has to be justified by reasonable suspicion. That probably would have been a better way to approach it, but frankly we went ahead and we just responded to the defense motion. All right. So, but actually I think you're probably, that was probably right because his hands were, you were issuing orders to him and the police were, and they seemed to be asserting authority over him. So it appears that he was seized at some earlier point before he was arrested. Right. So question. And he was not free to leave at that point. That's correct. All right. I believe the officer wanted to complete his investigation. He'd gotten the anonymous tip, which was fairly detailed. It was a white vehicle with a specific license plate and an individual named Ray Regis was dealing drugs at this boat harbor. So Sergeant Shimabukuro went out to the boat harbor. He actually saw that white vehicle. The license number matched what the tipster had said. He recognized the defendant as being in that white vehicle. He had known of the defendant because he's been with the police department for 18 years, and this particular individual had a criminal history. Go ahead. I'm sorry. All right. And now the other officer, Officer Tada, as the court correctly pointed out, had actually investigated and been the arresting officer for Mr. Regis a couple, Mr. Reyes a couple years before on a domestic violence case, and he testified that based on his knowledge that did end up in a conviction. Well, he didn't quite say that, but he said he believed so or something to that effect. It was an assault third that started as a domestic violence case. All right. So he had that information. So onto two key questions. First of all, was there reasonable suspicion based on the tip, given the fact that the tip itself was not of the kind that's usually recognized as adequate because it was just a static situation, you know, something that's going on there. So that's one question. Anybody could have given that tip. Your Honor. And the second question, which in some ways I'm more interested in, is what was their probable cause to arrest and or search for because just having a gun isn't it. So what was it? First of all, with respect to the first question, we do believe that this is a much stronger case than the Florida jail case, or in that it's not just the facts that were provided by the anonymous tipster, but when Sergeant Shimabukuro arrived at the boat harbor, he saw what he thought was a kind of a suspicious circumstance, and that was that the white car, Reyes's car, was parked facing the entrance to the boat harbor. It was in a parking field, which was before you actually get to the main boat harbor. It was deserted. There were no other cars except for the green pickup truck that was parked in the opposite direction so that both of the drivers could either speak to each other or pass objects between each other. Again, according to the testimony of Sergeant Shimabukuro, this allowed Reyes to see who was coming into the boat harbor and also gave both cars the vantage point of being aware if there were any other people or individuals approaching. He thought that that was, in and of itself, was also a suspicious factor. He was able to recognize Reyes as someone with a criminal history, and then when he came over to investigate, the first thing he did was to tell the pickup truck to leave. Did he say a criminal history and was being arrested for something? Anything other than a domestic violence arrest? No, just he knew that he somehow had a criminal history which involved domestic violence. He didn't know whether it was an arrest. I mean, he didn't testify to that effect. It was Tada who knew that he had been arrested and possibly convicted for domestic violence. So when the officer Shimabukuro parked and got out of his car to investigate, he immediately told the green pickup truck to leave, and as he testified. He didn't know anything about the guy having dealt drugs in the past? He did not, not at that point. And at that point, he figured to improve his odds because he was alone, the assisting officer had not yet arrived, let's have the pickup truck leave so I can focus my investigation on Mr. Reyes. He immediately went up to the car and asked Mr. Reyes to put his hands on the wheel so he could see whether he had any weapon. And instead of doing that, Mr. Reyes exited his car, left the driver's door open, and began to make his way towards the back of his car. Now, when he exited the car, he had a white Styrofoam, I guess a plate lunch in his hand, and what Sergeant Shimabukuro testified he thought was a weapon of some kind. It turned out to be a blue straw that was cut at the tip. But at the time that Sergeant Shimabukuro first saw it, he thought it was a weapon, and he drew, he unholstered his gun. I said I think we know the facts. Okay. And it really would be helpful if you could focus on the questions I asked. I mean, none of this is relevant to the stop, which we've already talked about, so now what about probable cause? As the officer is following Reyes, Reyes tells him, I have a gun, and it's for my protection. And at that point, Sergeant Shimabukuro does turn to where the open driver's door is, and he sees the gun. Okay. So what does he have probable cause for arresting for it at that point? He arrested the defendant for a Hawaii violation, which is stated in page 7 of our opening brief, footnote 4, which is a Hawaii revised statute section, and I quote from that, it shall be unlawful for a person to knowingly carry on the person or have within the person's immediate control or intentionally use or threaten to use a firearm while engaged in the commission of a separate felony. All right. So what was the ‑‑ He arrested him for a place to keep. Okay. And what was the evidence that he was engaged in a separate felony? I'm not sure Your Honor. That's the problem. So what did he have probable cause to arrest him for? I think he had probable cause to arrest him for just possession of that, what he thought was possession of the firearm. But there's nothing illegal about possessing a firearm. What did he have probable cause to arrest him for? This is the hole in the case. Did the district judge ever make a finding? No, she did not make a finding on that particular point. So unless he had probable cause to believe he was, like, there may possibly be probable cause to think he was dealing drugs. There may have been reasonable suspicion. There doesn't seem to be anything to arrest him for or to search him for. Well, let me ask you, did Officer Tada, is that his name? Yes. Who knew about the domestic relations situation, did he participate in the arrest? Officer Tada testified that he arrived at the point where Sergeant Shimabukuro and Mr. Reyes were towards the back of the car, that he heard Sergeant Shimabukuro tell the officer to drop that plate and that he was told by Sergeant Shimabukuro that the defendant had a gun in the car. He was or was not? I'm sorry? I didn't hear what you said. I believe he was, he did participate in the arrest. I don't know which officer actually told him. Did he know that there was a gun in the car? He was told by Sergeant Shimabukuro originally that there was a gun in the car, but he did not see it until after the arrest. So he stole it and he was known there was a gun in the car. Is there a violation of Hawaii law that a person who has been guilty of domestic relations, a violation is not allowed to possess a weapon as it is in the federal law? I don't believe there is, Your Honor, but I can't say for sure. Okay. I should say that neither of the briefs in this case were at all helpful because they didn't address the key issues of which this is one and in which the time of the stop is the other. It was somewhat frustrating. Are there any other issues the Court wishes me to address? No, thank you. Okay. Thank you. Well, you're having trouble addressing the issue of probable cause to arrest. You got anything more to say on it? No. Why did I have the feeling that the defendant said, why are you arresting me, and the officer said, for resisting arrest? No, that was the defendant's testimony, but the Court found that, and the officers denied that that occurred at the point where Reyes claimed it had happened. Reyes said that it happened immediately after, at the time the officer arrested him. That occurred later when the officers tried to cuff him after they saw the gun, and then they said, and you're going to be arrested for resisting arrest. So there was that contradiction in the testimony. Did the officers say you're being arrested because you have a gun? Yes. Sergeant Shimabukuro, I believe, made that statement when he made the arrest. Right. Exactly. That's what he said. That's a strange phrase, actually. It is a strange one. It doesn't have anything to do with the actual offense. Okay. Yeah. The final case. All right. All right. Thank you. Thank you very much. Counsel, do you have anything to add? One of my colleagues has a habit of telling lawyers that sometimes there is a good reason to not say things. So you have to decide whether this is one of those times. Yes. Just even when you look at Judge Gilmour's findings on pages 9 and 10, which is our excerpt of Record 8, it does state that that officer, Tata, only believed that the arrest resulted in a conviction. And he wasn't there. It says in the findings also that he was out of the hearing of Shimabukuro when the defendant was allegedly said, I used that for protection. So at that moment when he was seized, there was no probable cause to even arrest him for place to keep because he didn't know whether he had a license. He didn't know whether he could have a license. He didn't know if he's eligible. So he didn't see him with any drugs and he didn't have any reasonable position to believe that the gun was not licensed and he didn't have a right to have it. So. Okay. Thank you, counsel. The court is recessed until tomorrow morning. Thank you very much. The case is submitted. All rise. Thank you.
judges: Bright , D.W. Nelson, Berzon